Henry v. The Attorney General of the State of Alabama. Good morning, and may it please the Court. My name is Suzanne Norman. I represent Appellant, Cross, Appellee, Ed Henry. Mr. Henry's challenge of Alabama's Grand Jury Secrecy Act encompassed originally four counts, but ultimately it can be summarized briefly. Here what we're looking at is a witness's testimony in front of a grand jury related to allegations of prosecutorial misconduct based on that witness's knowledge that he had before he appeared as a grand jury witness, and then also knowledge that he gained about the same topic during his testimony, which supports the independent knowledge he had before appearing as a witness at the grand jury. So that's essentially... Counsel, I thought everybody was agreed that the knowledge that he had before he went into the grand jury, he could talk about that as much as he wanted, so long as he didn't say, and I told the grand jury that. Right. Am I wrong? So the Attorney General, back in 2017 in their response to a motion to, or in their motion to dismiss... I'm sorry, in the district court, did anybody dispute that? No. No, Your Honor. Okay. Then we're on agreement. All we got to do is decide whether we want to accept the concession or stipulation and y'all are adults, well-represented on both sides, I'm not inclined to turn down that concession or stipulation. As far as I'm concerned, I'm speaking only for me, you don't need to talk about that unless you're trying to distinguish it from him speaking about, or somehow use it in your argument about him speaking about what went on in the grand jury. Yes, sir. And we agree that the district court got it correctly, that below the statute, it's overbroad. And that's in comparison to the statute... I think we're now working at cross purposes. Maybe I'm missing something, but let's straighten this out. Yes, sir. It seems, so in the district court, the attorney general argued, you know, actually the statute should be reasonably read as only covering things that you learn from within the grand jury room and not things that you would otherwise know independently, right? Correct. And the district court said, I would have to rewrite the statute to accept that. And the statute, in fact, is overbroad. It does more than that. Correct. And declared the statute unconstitutional insofar as it requires that independent knowledge. That's part of what is the subject of the cross appeal, right? The attorney general says the district court was uncharitable in its reading of the statute. It should have read it in the way that we conceded is the more reasonable reading. Isn't that right? That's right. And then the district court, the position of the district court that the attorney general challenges on appeal is that it was an improper statutory construction. And we disagree just because the... Perhaps overread Butterworth to say that the attorney general's reading was unreasonable. I would have to rewrite the statute. But in Butterworth, as I understand it, the state of Florida conceded that their statute reached things that were beyond what occurred in the grand jury room. And the attorney general here is not conceding this differently worded statute does that. It's saying it really only covers what is learned in the room itself. That is correct. That's an absolutely correct assessment of what was argued below and what essentially is part of the issue on appeal. And in response to that, I think the district court pointed out that just based on looking and reading the statute itself, and it's specifically 12.16.216 is the primary one that we're focused on, is that the argument that nobody has been prosecuted for violating this in a way that we say that it can be construed and the district court did construe it, does not necessarily mean that, you know, the next attorney general or any other prosecutor can't read it the way that the district court decided that it could be read. And that would be in line with the issues in Butterworth because Butterworth Well, but at Butterworth, the state of Florida didn't argue for the limiting construction that the attorney general argued for here. And it seems to me that when you read this statute 12.16.126, it's limited to the information covered is limited to the nature or content of physical evidence presented to the grand jury, questions propounded within the grand jury proceedings, comments made in response, testimony before the grand jury. It's a totally reasonable reading as I see the statute for the attorney general to say no matter what the attorney general of Florida said about its statute in Butterworth, this statute is only reasonably read as covering what knowledge learned from the grand jury room and what was said in the grand jury room. If I knew that someone who testified before the grand jury's name was Mary, I knew that before she ever walked in to the room and she testified in the grand jury room that her name was Mary, I'm not forbidden from telling people that her name is Mary afterwards because I knew that beforehand, right? Right. You would not be prohibited from doing that. I think that would. That'd be an unreasonable reading of this statute. Right. For that kind of information. And I think that. Your over-breadth argument, it seems to me, to be dependent on that kind of unreasonable reading. Well, here and specific to the facts of this case, it's not, and I understand your point about if I show up and say hello, I can't, you know, tell anybody that I've ever told another human being hello before. But it's, it gets into. No, no, no. It goes beyond that. You're not forbidden from telling somebody that walking down the sidewalk after you parked your car and you go into the grand jury, you said hello to your old high school math teacher. If you learned something or did something outside the grand jury. Right. You can talk about it until people run you out of the room because they're bored. And this, I think that it is blatantly unreasonable. And I say that with respect to the district court judge. To read 216 as applying to anything except matters before the grand jury. Every phrase that prohibits has either a verb phrase or preposition phrase limiting it to the grand jury. We would disagree with that simply because of, well, primarily two things. And the first would be the comparison of content or nature of the testimony and that similarity to the content, gist or import of the testimony that was the language at issue in the Florida statute, but also Alabama's inclusion of in this prohibition that no past or present grand jury witness shall at any time directly or indirectly. I think that indirectly exposes it to the kind of interpretation that the district court adopted because it's from that reading and based on the warnings that the plaintiff received in this case and the facts. Counsel, can I jump in here? Absolutely. I tend to agree with my colleagues in how they review it. My question is, if they're right that, if Judge Carnes is right, that the only reasonable reading is that it applies to, does not apply to prior knowledge, how does that impact the standing question that the Attorney General brings up? Because their point is, if there's no reasonable way that it covers stuff outside the grand jury, then how could you possibly be injured? How could it even be arguable that you would be injured by this or that anyone would be compelled to silence as a result of an unreasonable reading? That's how I understand their standing argument. Right. The standing is specific to the overbreadth adoption. That and the fact that no one, the state has never enforced it in the history of the statute in the way that you've articulated. Well, your argument, I think, with overbreadth is that you can't conflate the merits with the determination of standing. You have to assume for the purposes of your argument that the statute does reach more than that and is overbroad, in which case your client who is injured by the statute because he did testify before the grand jury, he's covered by it, he has standing to complain about that overbreadth. It may be the overbreadth argument's wrong on the merits because the statute is more reasonably construed in the way the Attorney General is saying, but it doesn't mean you don't have standing to complain about it. I would agree with that, absolutely. Because we do raise an as applied and then there's the whole, it's the separation of what he knew before and what he knew after. I think that argument only applies as to the facial challenge, doesn't it? Yes, the overbreadth facial challenge, but I would agree with your points in your summary of what you interpreted our argument to be on that point. But then you have the prior decision in which the Attorney General said that doesn't apply. And it had not been enforced in years and years as opposed to this one, never been enforced. And we said that's a lack of a justiciable controversy, actually standing, no standing, and there's no credible threat of prosecution. How can you have standing if there's no credible threat of prosecution? Well, one thing I'd point out with that is the point that the district court made is that just because this law enforcement officer or official says that we're not going to enforce it, that does not tie any future prosecutor, prosecutors that aren't subject to that office's authority to adopt that same approach. Of course, in that instance, in Doe v. Pryor, the concession was because the statute had been, or a like statute had been declared, a materially similar statute had been declared unconstitutional by the Supreme Court of the United States. Correct, but also something that I think is important from Doe v. Pryor is the point made in the opinion, and I think this is on page 1287, is that the court points out that in Texas v. Lawrence, the concession by the attorney general remedies everything that the plaintiffs allege they're concerned about back in that case. And so in our case, to go back to the issues that have been raised, it's not just about what he can and cannot, or it's not just about his independent knowledge, it's also about things that he learned within the grand jury that relate directly to his independent knowledge. Before you sit down, I think you're a minute over your time. One of the other things we haven't talked about is your challenge, your as-applied challenge, right? Right. Which is a more open, that's a more novel question as I see it. Do you want to say anything about that? I would say that, as briefly as possible, that we believe that the district court got this balancing determination wrong below, and that the way that the statute was applied to my client was an improper— Don't we have to apply the balancing test that the Supreme Court applied in Butterworth? I'm sorry? Don't we need to apply the balancing test that the Supreme Court applied in Butterworth? That's certainly what we argued below in Motions for Summary Judgment. I don't think you went under that, but it does seem to me that's the one you have to apply. I think that that would be fair. I think under either, the district court in adopting a strict scrutiny analysis came with that from Doe v. Bell, which is the Eighth Circuit case, and I'm so sorry, I'm running really out of time, but— You're on our time right now. Okay. But I think under either, you still have to look and weigh the interests that are promoted by both sides, and here, Mr. Henry's assertions of why he wants to be able to say the things that he wants to say are getting diminished by the district court and by the Attorney General's office because they are characterized as trying to politicize the grand jury, but really, we make the point that the—not the allegations, but the information and the knowledge that he wants to share now that he learned either independently that was bolstered or confirmed or strictly what he learned as a witness for the grand jury is communication that is at the heart of the First Amendment, which is critical government speech. The only reason you know—if we're just assuming that the statute covers what happens in the grand jury room, whatever the witness knows about that, it knows as a matter of grace from the government, okay? And the interest that the government says this statute promotes, protecting grand jurors from external pressure, ex ante, and public scrutiny, protecting witnesses and encouraging them to testify freely, preventing suspects from fleeing or destroying evidence, protecting the reputation of suspects who are not indicted, protecting the innocent. Those seem to me really strong interests. We would agree with that. They are very strong interests. And to the extent that all that you're prohibited from speaking about is what you know by the grace of the government, by being in their proceeding, in their secret proceeding, and that's all you're prohibited from disclosing. It seems to me your interest in speaking about that is far outweighed by those interests. Well, I think it goes to precisely what kind of information this is, and that it's believed to be prosecutorial misconduct, and that being revealed in one way or the other in the grand jury, according to my client's perspective. All right, so your client gets to decide what's disclosed and not? Because it's whatever he views as misconduct? Well, I think that... The prosecutor was rude to a witness, so he can go out and talk about the questions and answers from that witness and other matters relating to it because he believes that was misconduct, sincerely. I think that it would really require some thought from the plaintiff or the individual who wishes to disclose this kind of information, but... So we're grand jury's proper functioning and secrecy is depend upon the thought patterns of people who are ticked off because their buddies got indicted. No, and I don't think, I don't believe so. Do what? And convicted. And that was a point that the district court raised in our summary judgment motion hearing, is that what is to keep this from just becoming a typical defense tactic of saying, well, I think that this was an improper use of the grand jury, and so I'm going to, because of this, if we rule one way or the other today, that now I get to go back and... If you're a grand jury witness, you think something's wrong in the grand jury, you can complain to the judge who has supervisory responsibility for the grand jury, right? And if you're indicted by the grand jury, you can complain about it in your criminal trial, in the pretrial proceedings, but... The criminal defendant absolutely does have that. And then... The witness can complain to the presiding judge. The issue we have with that is being the, basically, as the witness's own ability to defend constitutional rights, and not at the willingness of a defendant if you're not the same person, is that, in this case in particular, you can read the transcript and look to the rules and the text of the Grand Jury Secrecy Act. There's no provision that outlines the way that you can raise these issues. And I understand that that's the position that the Attorney General's Office is taking, that you can complain to the presiding judge. You don't have any contrary authority, do you? That you cannot? Right. No, we don't, but there's no warning that was provided to the witness to even be aware that there was a presiding judge. The judge isn't in the room. Counsel, the Alabama Rules of Criminal Procedure lay out exactly how a grand jury is selected, don't they? Yes. Including that a judge is in charge and presiding over it, and presides over the selection of the help of the prosecutor, correct? Correct. And ignorance of the law is no excuse. You know the law. In other words, it's the same positive law that you're talking about with the Grand Jury Secrecy Act. I don't see that it happens to be in another statute that that does it. I think the greater point is this. If your interest is, and as I understand it, we want to be able to report prosecutorial misconduct, and I agree with you, that is a serious interest. If there are other remedies for advocating or for explaining that interest or seeking remedy for those interests, whether it's in a bar proceeding, whether it's in the underlying criminal case, whether it's to the presiding judge, that seems to, in the balance, weigh against your side of it and not in favor of your side. Sure. I understand what you're saying. And to the point, just the last option that you presented is being able to— 30 seconds. We need to wrap this up. —file a bar complaint is that we believe that that would be a violation of the Secrecy Act because there's no exception in order to allow a witness to go and file a bar complaint, regardless of whether the bar complaint remains confidential. Under a reading of the statute, that's still a witness disclosing their own testimony.  You've saved three minutes for rebuttal. Most of that was on our time. Mr. Boudreaux. Thank you, Your Honor, and may it please the Court, I'll pick off on the — I'll pick up on the conversation y'all were just having and then move to our cross-appeal later, unless the Court prefers to— Yeah. Can you start somewhere else, if you don't mind? Sure. I appreciate it. It seems to me, and I don't know that it's going to matter at the end of the day, but it seems to me there's some tension in our standing law with regard to First Amendment overbreadth challenges. Doe v. Pryor, which is a case you rely heavily on, says what it says, and we've talked about it. But we seem to have other law which seems to suggest that, pretty consistent with how Chief Judge Pryor described it, that as long as the plaintiff is — has some arguably chilled — in other words, we don't get to the underlying merits, but as long as they can read the statute and arguably come to the conclusion that it would cover their conduct, that that alleges a sufficient challenge. We said it as recently as Speech First. I know it's not — it just came out recently. I know it's not a case cited, but I have a feeling you're familiar with it. Yes, Your Honor. And in Speech First, what we essentially said is — what I've articulated is that as long as — that as long as the plaintiff reasonably believes that it covers their conduct, that they have alleged an injury, which is completely separate from whether it — there's a likelihood of enforcement or some of the issues that were there in Doe. How do you explain that tension? What test should we apply here, and how does that implicate where we're at in this particular case? Yes, Your Honor. Well, I don't think it is a completely separate question or completely removed from the question of likelihood of enforcement. Whether someone is objectively chilled now in the present does depend on some sort of enforcement mechanism. In Speech First, that enforcement came in the form of Central Florida's Inquiry Board and all of that, and though they did not have, you know, express enforcement, it was still enough to objectively, reasonably chill the speech of the student. Isn't the easy answer, though, is that Doe is not a speech case involving an overbreadth challenge? I think that is an answer. I think also Doe points out on Article 3 standing, right, so overbreadth does not get rid of the Article 3 standing. We all agree. We all agree about that. And so then we're back to what is an injury, and Speech First — There's no question this statute applies to her client. He testified before the grand jury, right? Correct. He's covered by it. There's criminal penalties associated with his violation of it, right? Correct. If he violates it, he is injured by it. As I understand the way overbreadth challenges work, when you are challenging a criminal statute, let's say — let's say we'll use the easy example, the adult bookstore. So the adult bookstore sells pornography, right? It wants to sell, and included among the items there is child pornography, something that is constitutionally can be prohibited, and, you know, it can be made criminal. But the statute is not limited to that. It's overbroad. The adult bookstore gets to argue that because this also — this statute would also cover paintings at the Birmingham Museum of Art that are clearly protected by the First Amendment, even though my conduct is not constitutionally protected, I can challenge the statute as violative of the First Amendment because it's overbroad. Isn't that the way overbreadth works? Yes, Your Honor, but I guess I would say that the construction still has to be reasonable to be — to fit for the plaintiff to have an argument or the defendant in further — I think it's even broader than that. I think what we've said is it has to be arguable or an objective person, a layperson, has to look at it and think that it could — excuse me — it could cover them. And your brief even concedes, I think, that Henry's interpretation, broader interpretation of this statute is not, you know, foreclosed. It's just not the better interpretation. It's — your argument is for a limiting, a more reasonable interpretation, which would suggest that his interpretation is at least an arguable one. Well, I think it is foreclosed when the attorney general — and this goes back to Doe v. Pryor — when the attorney general said that he has no intention of enforcing it in the way that Henry fears. And when Butterworth — It's different, though, from the Doe v. Pryor situation where the attorney general is conceding that the statute is unconstitutional in all applications. I'm sorry. Could you say that once more? That it's — the attorney general is confessing error because the statute is wholly unenforceable. It's unconstitutional in all its applications. Well, imagine in Doe v. Pryor, if the sodomy statute, you could imagine that being applied in constitutional applications for a non-consensual — But that's not what we're talking about. What do we make of this back-to-speech first and why I think there's some tension there? We said there that in making the assessment, this assessment we're talking about, the threat of formal discipline or punishment is relevant to the inquiry, but it is not decisive. The fundamental question under our precedent, we said, was, quote, whether the challenge policy objectively chills protected speech. I mean, so enforcement, I think, is relevant to the inquiry. It's something we have to consider in it. But the question is, could an objective person looking at it in the case, in the example that Chief Judge Pryor gave, think that my regular pornography that's not prohibited is covered, even if I've never been arrested and I've been open for business for 20 years and no one's knocked on my door? Sure. And I guess I would just say that it is not an objectively reasonable interpretation in this statute to think that it covers outside jury. I think that's hard to say. For me, I'm only speaking for myself. I think that's hard to say when Butterworth, and I get the point that the state of Florida in its brief didn't quite make the same argument about narrower construction that y'all are making now. But at least if I'm a district judge and I'm trying to compare this and make sense of all this, Butterworth looks at a statute that regulates content and says that's broad enough to cover not just what's going on in the grand jury, but the content of what's said in the grand jury that could apply outside. I can't say that I'm a district judge and that is a completely unreasonable, non-objective way of looking at it, even if I ultimately disagree and think that the better interpretation is the one you all have put forward, especially when I'm putting a narrow construction on it. Yes, Your Honor. Let me tell you this. I disagree with the idea that because it refers to the content in the grand jury that could relate to speech outside, that it's reasonable to think that that prohibits you from engaging in that speech outside just because same speech went on inside. That to me is not a reasonable interpretation. The question has got to be under the statute the way it's written, is it reasonable to apply that statute to anything that you knew before you walked in the door and you confined yourself to talking about what you knew when you walked in the door and you didn't say, and I heard it also in the grand jury. I don't see how it could have been written much more narrowly than it is in that respect. Oh, so we may have a disagreement here. Unless I'm misunderstanding you, I think I agree completely with you that it is not reasonable to interpret the statute in the way that Henry does or in which the district court did. I will say, counsel, one thing that's causing me some trouble and confusion is something that the Chief Judge Pryor mentioned is, you know, we're allowed to peek the way our standing, the jurisprudence says, is we're allowed to peek at the merits, but we're not allowed to make a merits determination. And so the full textual analysis that leads me to conclude exactly what Judge Karn said, which is that the reading is ultimately not a reasonable one, I'm having trouble separating that from what we have to do with the standing, which is just take a little peek to see could someone conclude that. And that's where I think I'm having a little bit of trouble. Yes, Your Honor. Every peek I take, I see before and during the grand jury. But of course, one of my pet peeves is the Sacramento County decision. The Supreme Court said, don't you dare go to the merits until you've determined every single jurisdictional issue that hypothetically could be raised. The merits are just very easy on 216. But the standing issue apparently isn't. But we've got to address the standing issue. Yes, Your Honor. I guess one more point on this point, and then I'll move on if I can. That's what you get for raising it in your brief. See how easy it could have been to win this case without mentioning that? I think Duke v. Pryor also makes the point on redressability. And here you have, if Henry gets the declaration, which he got in the district court, no one benefits. There is, he does not benefit, third parties don't benefit. The third parties that he's supposedly raising this claim on behalf of, they don't benefit. And so that also, I think, goes into the Article 3 standing requirements, which do apply in overbreadth. I think I'll move on. Getting to the merits of this part of it, not the appeal part, but the cross appeal part. So one thing I'm a little confused, may not be the right word, but I'd like some clarification on is where the constitutional avoidance doctrine ends, which seems to suggest that we require some ambiguity to apply, versus a narrow construction doctrine. I'm making that up, but that's what I'll call it to differentiate between the two. Where in this sort of case, in order to not strike down a state statute, we narrowly or construe it in a reasonable way that avoids the shoals of overbreadth to read it consistently with how you do. If they're assuming there are two ways or two plausible ways to look at the statute. Yes, and I would certainly agree that you begin with a reasonable reading. And we think, as Judge Carnes just pointed out, that a reasonable reading of the statute, simply looking at the text, would not suggest a reasonable reader that what you knew prior to going into the grand jury room, that once you testify about that, you can never talk about that again. That is not a reasonable reading. And then, if there are ambiguities, there are all these other canons of construction in the constitutional avoidance canon that would suggest that in this case. Or the rule of lenity. Or the rule of lenity. Because this is a criminal statute, right? Or the Attorney General's interpretation, and they're just cascading reasons. I didn't know the Attorney General's interpretation is a canon. Not a formal canon, but it does, the unbroken line of how it has been enforced, or in this case not enforced, does shed meaning on, liquidates the meaning of what the provision actually is and is reasonably construed to be. So, and the other interpretation, as I understand it, is no grand jury witness shall willfully at any time, directly or indirectly, all right? That's a key part of what Mr. Henry's argument would be. Disclose any knowledge of the content of anything, any testimony, any evidence in the grand jury room. That indirectly, the content could mean you're forever barred from saying anything that came out, even though you knew about it independently. That's not, your point is, that's not a reasonable interpretation. My point is, that's what the alternative interpretation is, and the reason we have to employ some canons. Yes, Your Honor. I agree that that is the alternative interpretation. I think if you take a close look at the statute, I think this point has been well made today, that that is not a reasonable interpretation. Okay. In my remaining time, I would like to address the merits of Henry's appeal. You'll get some extra time. We gave your opponent some. Thank you, Your Honor. And to go back to a question that you raised, Chief Judge Pryor, about whether Butterworth applies, I think at the least, strict scrutiny does not apply. But I think you don't actually have to get to Butterworth, because the history and tradition of the First Amendment shows that grand jury secrecy has never been bought to raise a First Amendment claim. I think the Supreme Court's decision this last term in Houston Community College System versus Wilson— that scrutinizes, that provides a balancing test for a grand jury secrecy law. Why should we go anywhere else other than that? I think because Butterworth was considering the speech about prior knowledge, about what happened outside of the grand jury room. And it is that speech that does fall within the protection of the First Amendment. The Butterworth court expressly did not consider and certainly did not declare— Yeah, and it determined that that speech, not the kind of speech that you're trying to prohibit, was not constitutionally protected. But nevertheless, applied this balancing test because it was a grand jury secrecy law, right? And it was the speech that fell within the First Amendment. And I think the intervening decisions— Well, they didn't say it's protected speech, therefore, we're going to apply this balancing test. They apply the balancing test to determine whether it's protected speech or not, right? Well, Your Honor, I think they assumed that it gave rise to a First Amendment claim to begin with. And that's the starting question of whether is First Amendment protected speech at all or if it's something like obscenity that just simply falls outside of First Amendment protection. And our argument, based on Houston Community College system versus Wilson, in that case, the court determined—the plaintiff brought a claim saying that the community college board on which he sat, which had publicly censured him, he wanted to raise a First Amendment claim. And the court looked to history and tradition and said, well, based on the unbroken line of boards and assemblies publicly censuring their members, there's no evidence to suggest that that even gives rise to a First Amendment claim to begin with. I think that is the same here, that there's a long line of history and tradition when it comes to grand jury secrecy. It came over from England. It was part of the original public meaning of the First Amendment. It has never been thought to raise a First Amendment problem at all. So we don't think that Butterworth even applies. But if you do go to the balancing, the state has— It shouldn't be strict scrutiny. If there's any balancing test to be applied, you would say it's Butterworth. Yes, Your Honor. And I think this court is well aware of the compelling state interest that we have raised. And unless the court has any questions about that, I know that I'm over time, and I don't want to— The only question I would have is the perpetuity aspect of it, too. And the as-applied challenge here, I don't think it would reach that because we're only about, what, a year or two away from conviction, maybe three or four years away from the grand jury. But it does seem that in a balancing test, assuming the First Amendment applies in this situation, that at some point, the interests of the state wither away and the compelling interest of the person who wants to disclose what happened in the grand jury is still there. I think we all agree that there's at least some significant—that level of significance we can argue about, but some significance to the plaintiff's interest. But at some point, I'm talking about 80 years from now, does anyone really—is it really important for witness preservation and for fleeing and for reputational harm when everyone's dead and gone, but the witness happens to be around for whatever reason and wants to speak about it and write about it? At some point, it seems we'd have to give away. Am I wrong on that? I think you are wrong because grand jury secrecy itself is an institutional interest. And the question is not what happens with regard to this grand jury, with regard to this witness and Mike Hubbard's grand jury, but what happens to the next one and the next one and the next one after that? Is that true for an as-applied challenge? Yes, Your Honor, because it goes to the tailoring and the weighing of the interests. And part of the state's interest is to keep the grand jury proceeding as a secret, as a whole, and not simply for this one, but for the next one as well. And you'll think those same interests—reputational harm, witness—promoting witness truthfulness, you know, safety of witnesses is not protected with an 80-year cap or a 60-year cap or 100-year cap? I don't know what the cap would be, but I do know Ellen Brooks, for instance, testified—she was our expert in the district court—she testified about a— A case that happened 10 years later, she brought, right? Correct. And so you don't know when a grand jury proceeding will, you know, if the grand jury did not invite the defendant or was investigating a co-conspirator or something, but they didn't have information at that time. It is plausible that in 10 years, 20 years, 50 years, that the investigation will pick up, and that secrecy is very important. The—those issues were debated, as I recall. It's been years and years, but were debated when the—they released the grand jury transcripts and some of the statements out of the Black Sox scandal. And some of the folks argued against that, as I recall, and this may just be colonists, on the grounds that even there are people—I don't buy this myself—I don't have the same concern as these people. There are hypothetical people who don't want themselves to be judged harshly in the future by things they may have said at the grand jury. They don't want their grandchildren's grandchildren to think that that great-grandpop was a rat. He ratted out his buddies and so forth and so on. So that is an interest that I guess exists in perpetuity. Yes, Your Honor, I think that's right. And that interest exists also for the grand jurors themselves, who we want to be able to ask questions and not feel that maybe their questions are stupid or would be perceived in a wrongful light later on. And if you release the entire transcript, as Mr. Henry does, wants to do here, that completely blows up grand jury secrecy as we know it. Okay. Is there any tradition in history difference? I know there's a different set of rules. Believe me, every time you watch my wife derogatorily calls murder TV, they've got some jurors on there explaining the verdict, what went on in the pettit jury. Is there anything in the history and tradition of the grand jury secrecy that distinguishes on a principal basis a pettit jury non-confidentiality? I think the compelling interest in keeping the grand jury secret goes to the difference in how a grand jury operates versus a pettit jury. I mean, the pettit jury, the entire trial, all the evidence is made in public. That's not true for grand jury proceedings. Grand jury proceedings... And the verdict itself. The jury's verdict is public too. Yes, Your Honor. It's not a jury that is organized to be an investigatory tool that may determine that some people who it's investigating are actually innocent, right? Absolutely. Or that there's insufficient evidence, at least to have probable cause to believe that they committed a crime. Yes, Your Honor. Okay, Mr. Boudry, we understand your argument. Ms. Norman, you've saved three minutes. We will hold you to that. I might be able to keep these points under three minutes, so we'll see. Just a few things. When you were discussing these issues with Mr. Boudry, the issue of what test to apply, Butterworth versus strict scrutiny was brought up. In Butterworth, they're citing essentially the same four states' interests that the state of Alabama cites in their own act, in section 214, where it's the fear from fleeing felon, the ability for a grand jury to have free and open discussions, all of that kind of thing. The problem, though, is that we're talking about the information from the grand jury room itself as opposed to the independent knowledge. That's the problem. What the Butterworth court says about those interests in the independent knowledge context is not what we're talking about here. Right, it's specifically to what Mr. Henry learned as a witness in the grand jury. To kind of pivot to the perpetuity aspect of the ban on being able to speak about what you testified to, I think an important frame for this case in particular is that it is just about this one witness. We don't want, we're not asking the court to rule that a grand juror can go out and discuss what testimony was provided in the grand jury. It puts the decision into the hands of that specific witness. These interests about what's going to happen 80 years in the future, that issue was kind of addressed in McKeever v. Barr, where a historian wanted to go and get records from a grand jury that occurred, I think, in the 1950s, and the court denied that request because these participants in the grand jury have their interests still at issue. But here, that's distinct from something like that because, again, it's just Mr. Henry's desire, if he so chooses, to be able to disclose this information. The witness that's called right after him is certainly free not to disclose what was discussed in the grand jury. And so- Yeah, but we don't know that what he's going to disclose isn't, while I was in there asking that question, one of the grand jurors asked me is, well, we've heard from Witness Smith, and Witness Smith said- You're violating the law, Judge. I mean, you can't control that. Well, in this case specifically, that's not an issue because there are no questions that were posed by a member of the grand jury. Okay. Okay, Ms. Norman, we'll be in recess until tomorrow. All rise.